## Isaac R. Adams and others v. Moses W. Field.

*Payment: Burden of proof.* The burden of proof of payment is on the debtor, and where there is a conflict of testimony upon the subject, and the parties being sworn contradict each other, the question must be determined by the probabilities and circumstances corroborating the one or the other.

The preponderance of testimony and the corroborating circumstances favoring the complainants, the defense was rejected.

*Practice in supreme court: Appeal in chancery: Opening proofs: Rehearing.* On an appeal in chancery the proofs will not be opened in the appellate court for

hearing there on appeal; but where a proper case is made out for a rehearing upon new evidence, the cause will be remanded to the court below, with proper directions for a rehearing there. An appellate court can only pass upon the case as it stood when decided in the court below.

*Heard April 17. Decided April 23.*

Appeal·in Chancery from Wayne Circuit.

This is a foreclosure bill filed by Isaac R. Adams, John O. Adams, and Mary G. Hodgkins, adults, and Charles S. Adams, and William M. Adams, minors, against Moses W. Field. The defendant answered, and ·proofs were taken. The contest was over a single disputed payment. The decree below allowed this payment, and the complainants appealed.

After the appeal had been taken and perfected, the complainants moved by petition in this court for an order opening the proofs to admit a letter from the defendant to Samuel Roberts to be attached to the record and read in evidence.. The petition alleges that the letter was first discovered after the appeal had been taken and perfected. The letter was as follows:

"DETROIT, June 26, 1861.

"SAMUEL ROBERTS, *Algonac.*

"DEAR SIR—I am prepared to pay the interest on my note given to William P. Moore. The interest is four hundred and ninety dollars. I paid Mr. Moore two installments in advance, and by an agreement with him, which I showed your wife this morning, the installments were extended one year. I want you to sign a form of receipt which I have here, and as your wife said you would be here on Saturday I told her that it would be as well to let the matter rest until you came.

"Yours truly,

(Signed) "MOSES W. FIELD."

"P. S.—I want the receipt signed by you as administrator, etc."

This letter was admitted by stipulation to be genuine, but the defendant reserved in the stipulation the privilege of introducing further proof in relation to the matter, if the proofs should be opened to admit the letter.

*Trowbridge & Atkinson*, for the motion.

*D. C. Holbrook, contra.*

THE COURT held that the proofs could not be opened in the appellate court for hearing there on the appeal, but that the proper practice is, where a case is made out for a rehearing upon new evidence, to remand the cause to the court below, with proper directions for a rehearing there; that an appellate court can only pass upon the case as it stood when decided in the court below. As it could not be determined without an examination of· the entire cause, whether a rehearing would become necessary to enable the court to do justice, the question of a rehearing was reserved till the hearing of the appeal, when it became immaterial as the disputed payment was disallowed upon the proofs as they stood.

*Trowbridge & Atkinson*, for complainants.

*D. C. Holbrook,* for defendant.

CAMPBELL, J.

The bill in this cause was filed to foreclose a mortgage given by defendant to William P. Moore, deceased, June 25, 1858, for nine thousand dollars, payable in nine annual installments with interest. There is now no controversy except as to one payment of one thousand dollars alleged

to have been made June 25, 1861, to Mrs. Mary A. Roberts, wife of Samuel Roberts, administrator of Moore's estate. Defendant claims that he paid her this money, and that fact is denied by complainants.

As there is a direct conflict of testimony, and the statements made by the various witnesses depend upon circumstances to determine the accuracy and value of their evidence, it will be necessary to consider the facts supposed to throw light upon the conflict. As payment is an issue made affirmatively by defendant, the proofs must preponderate in his favor in order to exonerate him from the obligation.

He makes out by his own oath and certain documents a *prima facie* case of payment. He states that his memory is so refreshed by these as to recall the facts. Those documents are, *first,* a letter from Samuel Roberts, dated Algonac, June 25, 1861, directed to defendant, as follows: "Please pay the bearer, my wife, the installment due on your note to Wm. P. Moore, deceased. The bearer will indorse the same on said note. Installment and interest fourteen hundred and ninety dollars ($1,490)." *Second,* a receipt, bearing no date, signed by Mrs. Roberts, and the body of it being as follows: "Received of Moses W. Field, one thousand dollars, to apply on his note and mortgage given to the late Wm. P. Moore, and dated June 25, 1858. This amount being the installment due on said note and mortgage on the 25th June 1861."

Mrs. Roberts positively denies receiving any money from him at that time, or at any time but October, 1863, when she says she received three hundred dollars. Her statement is that, on going to Mr. Field with her husband's letter, he told her he was not to pay the installment due that year, but that by arrangement with Mr. Moore (who had died since the last previous payment accrued), it was to be postponed. She denies that he paid her any thing then, or that

she signed any receipt then. She denies any receipt but one signed when she says she received the three hundred dollars, and which she supposed was for the latter sum.

Mr. Roberts testifies that in consequence of his wife's coming home without any money, he went to Detroit in a few days and saw Mr. Field, who made similar representations to him as to the agreement to postpone for that year, and that Field paid him the interest, four hundred and ninety dollars.

Mr. Field testifies that he did represent to Mr. Roberts that he had made such an arrangement with Moore. He does not remember the time when this was, but thinks in 1864, and not as long ago as 1861.

There is no doubt Roberts went to see Mr. Field for some purpose within a few days after he sent his wife down. At that interview Mr. Field paid him the four hundred and ninety dollars interest, which was due June 25th.

The indorsement of this sum is in Mr. Field's handwriting. The last previous indorsement was of a payment to Mr. Moore a year previous. The next one, which is also in Mr. Field's writing, is of an installment of one thousand dollars, indorsed as due June 25, 1862. This money appears by a receipt in proof as actually paid July 7, 1862. The next receipt for four hundred dollars in December, 1862, was given "to apply on the interest," not corresponding with any annual sum due on any theory of the case, and throwing no light therefore on the matter in dispute. Mr. Field does not produce any of the subsequent receipts. The indorsements on the mortgage as made are upon complainant's theory, but of course are not admissible against Field when not bearing his handwriting. Those identifying the installments by number appear to have undergone no change, and correspond in the two

instruments throughout. There are no marks on them which are suspicious, and they cannot operate against complainants, although not evidence in their favor.

There is some negative evidence, showing that while a check for four hundred and ninety dollars was paid by Field's banker July 1, 1861, there was no one thousand-dollar check paid between that time and June 25th. There is evidence that a check of three hundred dollars was paid at the time Mrs. Roberts swears she received three hundred dollars from defendant, and it is shown that the dates of the receipts and indorsements are on some occasions put back of the time the money was actually paid, and as of the time it was due.

No witness is impeached, and the statements of each of them, standing by itself, is reasonable. We must, therefore, endeavor to balance the proofs, if possible.

Mrs. Roberts and her husband testify positively that Field told them the payment was to be postponed. He says there was such a talk with Roberts at some time but cannot tell when, but thinks some years later. He says it was because he had anticipated previous payments. Moore being dead at the time, of course Field was the only one who knew of the arrangement at that time. It was at least very natural that if any payments were to be postponed it would have been the next falling due. The two positive witnesses testifying clearly, and there being no suspicion cast on them, may properly be regarded as preponderating unless other things interfere.

Field is a business man, and must be supposed to have business habits to a reasonable extent at least. The installments indorsed by him on the note are indorsed as of the date they were due and not when paid, and are made, therefore, with some care to protect his rights. The letter

brought to him by Mrs. Roberts, informs him she would
indorse the payment on the note, indicating that she must
have had it with her.    It is a very singular omission that,
while the payments of 1859 and 1860 are promptly indorsed,
and the payment of four hundred and ninety dollars made
to Roberts a few days after her visit, and the payment of
June, 1862, are also indorsed in Field's own handwriting,
this claimed payment to her of one thousand dollars is not
indorsed.    And no very plain reason appears why, if any
payment was made to her, it was not of the whole sum
of fourteen hundred and ninety dollars, which was due.

There is also no apparent reason why Roberts should
have gone to see him so soon after the wife's visit, if she
had received such a sum as she was contented with.    There
is no testimony indicating an inability or unwillingness in
Field to pay her the whole sum if he paid her any thing.
Her testimony and her husband's, both explain the matter
consistently, and the payment of the interest and its
indorsement by Field, without any other indorsement for
that year; corroborate their story.

In the face of this, the only counter-argument is that a
receipt of July, 1862, is for the payment said to be due in
June, 1862, and an indorsement in November, 1863, is
made as "being the fourth installment."    The indorsement
of the payment of 1862 is made, however, as "being the
third installment," and there is no more reason to lay
stress on the one than on the other.    Moreover, if the pay-
ment was postponed a year, then the payment of 1862 would
have been correctly called the third installment, and the
evidence of complainants would be confirmed by these
facts.    They have no tendency whatever to help the case
of the defendant.

As the case stands, we are not obliged to frame any

theories. The testimony, in our opinion, preponderates in favor of complainants. The payment cannot, in our opinion, be allowed upon the evidence in the record.

The decree must be reversed, with costs in both courts, and a decree of foreclosure granted to collect the sum in controversy, with interest from June 25th, 1861.

CHRISTIANCY, CH. J., and COOLEY, J., concurred.

GRAVES, J., did not sit in this case.